IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JANIFORD NMN WINSBOROUGH, | ) | Case No. 05-70113 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| JANIFORD NMN WINSBOROUGH, | ) | Adversary No. 05-4174 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

Janiford Winsborough ("Debtor") filed a complaint seeking a determination that her student loan debt should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(8) on the ground that repayment of such debt would impose upon her an undue hardship, which allegations defendant United States Department of Education ("Defendant") denied. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that Debtor's student loan debt is not dischargeable pursuant to § 523(a)(8).

I. FACTUAL BACKGROUND

In 1989, Debtor enrolled at the University of Missouri at Kansas City to obtain a Masters degree in Public Administration. She took out two student loans during her time in graduate

school. In 1991, she graduated with her Masters degree at the age of 48.

Prior to entering graduate school, Debtor worked in the real estate industry in Colorado from 1983 to 1989, earning as much as $6,000 per month.[1] After graduate school, Debtor started a recycling business which she ran from 1990 to 1997. She then sold real estate again, this time in Missouri, from 1997 to 1999, earning approximately $2,500 per month. In the year 2000-2001, in which Debtor worked as a mail clerk and later as an English teacher for the Kansas City, Missouri school district, she earned $27,724.[2] She has also worked for the U.S. Postal Service and at a factory, Orbseal, between November 2001 and April 2005, earning from $2,000 to $2,400 per month. Currently, Debtor is working as an adjunct professor at Park University where she teaches a six week class and most recently earned $624 per month[3].

Debtor suffers from a number of medical conditions more fully described in her testimony and medical records. In 1997, her thumb was partially amputated as a result of an accident. Debtor also testified that she has "black toe" which causes her discomfort when walking or sitting for long periods. In 2003, Debtor had a femoral bypass surgery on both legs, which was not without complications. She has chest pain due to "mild to moderate nonobstructive coronary disease."[4] Finally, Debtor also testified that she has sleep apnea, arthritis and an irregular heartbeat[5].

In 2003, Debtor consolidated her two student loans for a total debt of $27,290 at 4.5%

---

[1] Pl.'s Ex. A.

[2] Pl.'s Exs. 13 & 14.

[3] Pl.'s Ex. 23.

[4] Pl.'s Ex. I.

[5] Pl.'s Exs. 2 & II.

interest and enrolled in the Income Contingent Repayment Plan with payments of $10.08 per month based on her income and family size.  In October 2003, Debtor made and was granted a 12 month Economic Hardship Deferment Request.[6]  In February 2005, Debtor made and was granted a General Forbearance Request.[7]  On October 14, 2005, Debtor filed a Chapter 7 bankruptcy petition.

## II.  DISCUSSION

### A.  Undue Hardship

Debtor contends that it would be an undue hardship for her to repay the remaining amount due on her student loan.  Under § 523(a)(8), certain student loans are nondischargeable unless repayment of the loan would impose an undue hardship on the debtor or her dependents.  The burden of establishing undue hardship, by a preponderance of the evidence, is on the debtor.  *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8th Cir. 1981); *Ford v. Student Loan Guarantee Found. of Arkansas (In re Ford)*, 269 B.R. 673, 675 (B.A.P. 8th Cir. 2001).  Unfortunately, the Code contains no definition of the phrase "undue hardship" and interpretation of the concept has been left to the courts.  In this Circuit, the applicable standard is the "totality of the circumstances" test.  *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir. 2003); *Andrews*, 661 F.2d at 704; *see also, Fahrer v. Sallie Mae Servicing Corp. (In re Fahrer)*, 308 B.R. 27, 32 (Bankr. W.D. Mo. 2004).

In applying this approach, the courts are to consider: (1) the debtor's past, current and reasonably reliable future financial resources; (2) the reasonable necessary living expenses of the debtor and the debtor's dependents; and (3) other relevant facts and circumstances unique to the

---

[6] Def.'s Ex. 6.

[7] Def.'s Ex. 5.

particular case. *Long*, 322 F.3d at 544; *Ford*, 269 B.R. at 676. The principal inquiry is to determine whether "the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living"; if so, the indebtedness should not be discharged. *Long*, 322 F.3d at 554. The Court must determine "whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on her student loan without reducing what the debtor and her dependents need to maintain a minimal standard of living." *In re Andresen,* 232 B.R. 127, 139 (B.A.P. 8th Cir. 1999); *accord Long*, 322 F.3d at 554-55.

The "totality of the circumstances" is obviously a very broad test, giving the Court considerable flexibility. As a result, courts in the Eighth Circuit have looked to a number of facts and circumstances to assisting them in making this determination including: (1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has made payments on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of the study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness. *Vermaas v. Student Loans of North Dakota (In re Vermaas)*, 302 B.R. 650, 656-57 (Bankr. D. Neb. 2003); *Morris v. Univ. of Arkansas*, 277 B.R. 910, 914 (Bankr. W.D. Ark. 2002). Applying the totality of the circumstances test to the instant case, the Court examines each factor separately.

B.  Analysis of the Totality of the Circumstances

1.  Past, Present and Reasonably Reliable Future Financial Resources

The first factor the Court must consider is Debtor's past, present and reasonably reliable future financial resources.  Debtor's Schedule I showed a present net monthly income of $642.[8] Debtor is currently working as an adjunct professor and is only able to work in this position when enough students are enrolled in the course she teaches, thus she is not guaranteed a monthly income in this position.  Further, a monthly income of this amount is certainly not enough for Debtor to repay her student loan.

Regarding Debtor's past economic resources, she has in previous years earned significant yearly income.  The tax returns for the years 2000 and 2002 indicate adjusted gross income of $27,724 and $23,258, respectively.[9]  Thus, there is evidence that Debtor has been able in the very recent past to earn a significant income as both a teacher and a postal worker.

However, this case really centers on Debtor's future income and the lack of significant impediments to repaying her student loans.  Although Debtor is presently unemployed, she does have significant earning capacity, a fact which the Court must consider in the undue hardship analysis. *See Weller v. Texas Guaranteed Student Loan Corp. (In re Weller)*, 316 B.R. 708, 716 (Bankr.W.D.Mo.2004) (Court must look beyond the debtor's present to the foreseeable future and consider debtor's education, training, employment history and ability to earn.); *Chapelle v. Educational Credit Mgmt. Corp. (In re Chapelle)*, 328 B.R. 565, 571-72 (Bankr.C.D.Cal.2005) (Court declines to discharge student loan debt where debtor has a law degree, is healthy and has 13 years before retirement age during which she has the potential to secure employment and

---

[8]Defendant's Ex. 10.

[9]Def.'s Ex. 14.

make payments on her student loans).

As more fully discussed below, there was no convincing evidence presented that Debtor cannot continue to work   Although she submitted evidence of numerous medical conditions, there was no expert medical testimony presented to demonstrate that she would be unable to work now or in the near future for medical reasons[10], and Debtor herself testified that she did not consider herself disabled. Debtor also submitted evidence that she has aggressively searched for employment (and is currently doing so), but has been unsuccessful in obtaining employment[11]. However, based on Debtor's past education, training and work experience, the Court believes that she will most likely be able to obtain employment in the near future.  Debtor has several degrees and employment experience in both teaching and real estate.  Debtor worked in the real estate industry in Colorado from 1978 to 1989 and made $80,000 at least one year during that time period[12].  As indicated above, Debtor earned more than $25,000 in 2000 working as a teacher.  Although she may need to renew or obtain additional certification to teach or sell real estate, there is no evidence that Debtor would be unable to obtain the necessary license or certification or that she would not be able to teach in a setting where a certificate is not required.

2. Reasonable Necessary Living Expenses

The second factor the Court must look at is Debtor's reasonable living expenses.  Debtor lives quite modestly.  Schedule J shows total monthly expenses of $1,313.[13]  None of these

---

[10] *See* Pl.'s Exs. 2 & II.  Records regarding Debtor's leg bypass surgery indicate her last treatment occurred in 2003 and she was released in 2004.  Medical records from August 2005 concluded there was "no indication for percutaneous intervention" presented at that time regarding her heart catheterization. Records in July 2005 found there was no evidence of a heart attack and that she should follow up in one year.

[11] Plaintiff's Ex. A.

[12] Pl.'s Ex. 13.

[13] Def.'s Ex. 10.

6

expenses appears to be unnecessary or unreasonable. None is disputed by Defendant. Debtor testified that if she were to obtain employment that her expenses would increase by approximately $780 per month due to an increase in automobile, insurance, clothing and rent expenses. However, these increases were not supported by any evidence and most likely would be offset by the increase in income from Debtor's new employment.

### 3. Other Relevant Facts and Unique Circumstances

As to the third factor the Court must evaluate, Debtor has not presented evidence of unique facts or circumstances that the Court believes will cause an undue hardship for Debtor to repay the student loan. The mere fact that Debtor is near normal retirement age does not mean that the debt should be discharged. *See, e.g., Goulet v. Educ. Credit Mgmt. Corp.*, 284 F.3d 773, 779 (7th Cir. 2002) (finding that by returning to graduate school at age 45 and voluntarily assuming debt, debtor must have believed he had future earnings potential); *see also, In re Houshmand*, 320 B.R. 917, 921-22 (Bankr. W.D. Mo. 2004) (finding debtor took out student loan at age 48; not unreasonable to expect him to repay on loan after eligibility for retirement); *In re Mandala*, 310 B.R. 213, 222 (Bankr. D. Kan. 2004) (finding fact that obligations will persist past debtor's retirement age is the result of her choosing to return to school on borrowed money at age of 36). In this case, there are certain facts that mitigate the effect of age as an indicator of undue hardship. Debtor took out this loan later in life in order to obtain a master's degree in public administration. Specifically, she obtained the original loan in 1989 when she was 45 years old[14]. The loans were consolidated in 2003 and Debtor enrolled in the Income Contingent Repayment Plan ("ICRP") at that time. Her payment under the ICRP was $10.08 per

---

[14] Pl. Ex. A, p. 8.

month[15]. Debtor then made an Economic Hardship Deferment Request in October 2003. When the loan entered repayment status in October 2004, Debtor made three monthly payments under the ICRP. Debtor then made a second forbearance request in February 2005 due to being on medical leave from her job[16]. Thus, Debtor requested forbearances for a total period of approximately 22 months, which requests were honored by the lender[17]. Debtor should therefore have understood that the effect of those requests would be to either extend the length of the repayment period or increase the amount to be paid, including the amount of the required monthly payments, or both. As a result of having requested and received these deferments, Debtor might reasonably expect therefore to have been required to pay on this debt for longer than previously planned. It does not therefore seem unreasonable to suggest that Debtor should be required to continue to pay on her consolidated student loan and continue to work in order to generate the income necessary to make those payments.

Debtor testified and offered other evidence that she suffers from a number of medical conditions including amputation of her thumb, arthritis, coronary artery disease, femoral artery disease, sleep apnea, black toe, irregular heartbeat and other issues[18]. Debtor asked the Court to draw the conclusion that these health conditions limit her ability to perform tasks that would be required of her were she to obtain a job and would otherwise restrict her ability to continue to work for an extended period of time. Debtor introduced into evidence a number of medical

---

[15] Def.'s Ex. 7.

[16] Def.'s Ex. 5.

[17] Def.'s Exs. 5 & 7.

[18] Pl.'s Ex. 1A, pp. 3-8.

records[19]. These records, however, do not support that Debtor is disabled. Her health conditions do not seem to significantly limit Debtor's ability to work; she has been employed full-time with all of the conditions. Since the amputation of her thumb, for example, Debtor has worked in manufacturing, as a teacher and as a mail handler. While Debtor would like the Court to conclude that she is unable to continue to work, she was unable to present any expert medical evidence to support the impact of her conditions on her ability to work, nor was any evidence presented as to the costs of these medical conditions in relation to Debtor's income. Accordingly, the testimony does not support a conclusion that Debtor cannot continue to work or that her medical conditions significantly limit her ability to earn.

Debtor apparently did not file bankruptcy for the sole or even principal purpose of discharging her student loans. The balance on her consolidated student loan is less than 30% of the total debt which she seeks to discharge. In addition, she enrolled in ICRP and did make payments under that plan, although such payments were minimal.[20] In addition, during those periods of time when she was unable to make a monthly payment, Debtor communicated with the holder of the loan and requested a forbearance or deferment[21]. These factors do lend some support to Debtor's request to discharge the loan.

Debtor also contended that the knowledge that she owes this loan and must pay it back causes her significant stress which leads to chest pain and other physical problems and cites *In re Reynolds*, 425 F.3d 526 (8th Cir. 2005), for the proposition that the stress itself supports the loan being discharged. However, the Court does not believe that Debtor's situation rises to the level

---

[19]Pl.'s Ex. 1A, pp. 3-8; Ex. 2.

[20]Def.'s Exs. 3, 4 & 7.

[21]Def.'s Exs. 5 & 6.

indicated by the facts in *Reynolds*. In that case, the debtor had medical diagnoses of "major depressive disorder, recurrent, in near full remission" and " dysthymia." *Id.* at 533. Conversely, in this case, Debtor has no history of any type of mental illness and has presented no evidence indicating any type of mental illness caused by extreme stress.

As mentioned above, under the ICRP at her current income, Debtor's monthly payments on her student loan would be minimal at $10.08 for 17 payments. Further, relative to other undue hardship analyses which this Court has performed, the total amount of debt in this case, $27,209, is not an exorbitant amount and should be manageable for Debtor to make minimum payments towards under the ICRP. Thus, based on the evidence presented, the additional relevant facts and unique circumstances presented to the Court do not support a finding that it would be an undue hardship for Debtor to repay her student loan.

For all of the above reasons, the Court finds that the indebtedness owed by debtor Janiford Winsborough to defendant U.S. Department of Education is not dischargeable pursuant to 11 U.S.C. § 523(a)(8).

A separate Order will be entered in accordance with Bankruptcy Rule 9021.

Dated: <u>April 12, 2006</u>               /s/ Dennis R. Dow
                                            THE HONORABLE DENNIS R. DOW
                                            UNITED STATES BANKRUPTCY JUDGE

Copies to:
Janiford Winsborough (pro se)
Cari Franke Walsh